UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ELIZABETH M. GINTY,

                    Plaintiff,

   -against-

BROOKHAVEN SCIENCE ASSOCIATES, LLC,
JON ROBB MERKEL, CRISTEL COLON,
KRISTIN WHITE (sued in their individual
capacities pursuant to New York Executive
Law § 296(6),

                    Defendants.
------------------------------------------------------------X

CV: 19-7066

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Elizabeth M. Ginty ("Plaintiff"), by her attorneys SCOTT MICHAEL MISHKIN, P.C., complaining of the Defendants, as and for her Complaint, alleges as follows:

**PRELIMINARY STATEMENT**

Plaintiff brings this instant action pursuant to (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") for Brookhaven Science Associates, LLC ("BSA") discrimination and sexual harassment against plaintiff based on her gender, the creation of a hostile working environment and for retaliation against plaintiff for engaging in protected activity; (2) New York Executive Law §290 *et seq.* ("NYEL"); for BSA's, Jon Robb Merkel's ("Merkel"), Cristel Colon's ("Colon"), and Kristin White's ("White")(collectively referred to as "Defendants"), discrimination and sexual harassment against Plaintiff due to her gender, the creation of a hostile working environment and for retaliation against Plaintiff for engaging in protected activity.

**JURISDICTION**

FIRST:      The jurisdiction of the Court over this controversy is based upon

1

28 U.S.C. § 1331 as this matter is raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

SECOND: The Court also has supplemental jurisdiction over this case pursuant to 28 U.S.C. §1367(a), as Plaintiff's NYEL claims form part of the same case and controversy.

THIRD: Therefore, this court has proper jurisdiction in this action.

## VENUE

FOURTH: The unlawful practices alleged below were committed within the County of Suffolk, State of New York.

FIFTH: At the time of the unlawful practices, Plaintiff was, and still is, a resident of Suffolk County in the State of New York.

SIXTH: The causes of action arose in the State of New York while Plaintiff was employed by Defendant BSA, which conducts substantial business in the County of Suffolk in the State of New York.

SEVENTH: Therefore, this Court is the proper venue under 28 U.S.C. §1391.

## PARTIES

EIGHTH: At all times relevant to this action, Plaintiff was and is a female adult individual residing in the State of New York, County of Suffolk.

NINTH: At all times relevant to this action, Plaintiff was an "employee" of Defendant BSA as defined by Title VII and NYEL.

TENTH: At all times relevant to this action, BSA was an "employer" as defined by Title VII and NYEL.

ELEVENTH: At all times relevant to this action, Plaintiff was an individual employed by BSA.

TWELFTH: At all times relevant to this action, Plaintiff was able to successfully complete all the essential functions that were required of her at BSA.

THIRTEENTH: BSA is a research facility and conducts same for the US Department of Energy.

FOURTEENTH: BSA is located at 40 Brookhaven Avenue in Upton, New York 11973.

FIFTEENTH: At all times relevant to this action, Merkel was BSA's Radiological Control Technician.

SIXTEENTH: Merkel aided, abetted, incited, controlled, compelled, and/or coerced the acts against Plaintiff that are forbidden under Title VII and NYEL.

SEVENTEENTH: Merkel actually participated in the conduct giving rise to Plaintiff's discrimination, sexual harassment, hostile work environment, and retaliation claims and is thereby individually liable for his willful, wanton and malicious discriminatory, harassing and retaliatory treatment against Plaintiff pursuant NYEL.

EIGHTEENTH: Merkel is named in his individual capacity because he knew, or should have known, that his and BSA's ongoing/continuous willful and malicious actions against Plaintiff violated her clearly established constitutional and statutory rights, of which a reasonable person would have known that Plaintiff's rights were being violated.

NINETEENTH: Merkel arbitrarily, selectively and with malicious intent discriminated and harassed against Plaintiff based on her gender and retaliated against Plaintiff based on Plaintiff's involvement in protected activity.

TWENTIETH: At all times relevant to this action, Colon was the Human Resources ("HR") Representative at BSA and, upon information and belief, had the authority to hire, fire, and discipline employees.

TWENTY-FIRST: Colon had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her discriminatory treatment, harassment, retaliatory treatment and adverse actions against Plaintiff.

TWENTY-SECOND: Colon acted with the understanding that her actions violated clearly established legal rights of Plaintiff.

TWENTY-THIRD: Colon aided, abetted, incited, controlled, compelled, and/or coerced the acts against Plaintiff that are forbidden under NYEL.

TWENTY-FOURTH: Colon actually participated in the conduct giving rise to Plaintiff's discrimination, harassment, hostile work environment and retaliation claims and is thereby individually liable for her willful, wanton and malicious discriminatory, harassing and retaliatory treatment against Plaintiff pursuant to the NYEL.

TWENTY-FIFTH: Colon is named in her individual capacity because she knew, or should have known, that her and BSA's ongoing/continuous willful and malicious actions against Plaintiff violated her clearly established constitutional and statutory rights, of which a reasonable person would have known that Plaintiff's rights were being violated.

TWENTY-SIXTH: Colon arbitrarily, selectively and with malicious intent discriminated against and harassed Plaintiff based on her gender and retaliated against Plaintiff due to her engagement in protected activity.

TWENTY-SEVENTH: At all times relevant to this action, White was BSA's HR Representative.

TWENTY-EIGHTH: White aided, abetted, incited, controlled, compelled, and/or coerced the acts against Plaintiff that are forbidden under NYEL.

TWENTY-NINTH: White actually participated in the conduct giving rise to Plaintiff's discrimination, sexual harassment, hostile work environment, and retaliation claims and is thereby individually liable for her willful, wanton and malicious discriminatory, harassing and retaliatory treatment against Plaintiff pursuant NYEL.

THIRTIETH: White is named in her individual capacity because she knew, or should have known, that her and BSA's ongoing/continuous willful and malicious actions against Plaintiff violated her clearly established constitutional and statutory rights, of which a reasonable person would have known that Plaintiff's rights were being violated.

THIRTY-FIRST: White arbitrarily, selectively and with malicious intent discriminated against and harassed Plaintiff based on her gender and retaliated against Plaintiff based on Plaintiff's involvement in protected activity.

## FACTS

THIRTY-SECOND: Plaintiff began her career at BSA on or about March of 1997 as a part-time employee and became a full-time employee of BSA in 1998.

THIRTY-THIRD: Plaintiff has worked and continued to work within BSA's Radiological Control Division ("RCD") for her entire twenty-two (22) year career at BSA.

THIRTY-FOURTH: During the course of Plaintiff's twenty-two (22) year career with BSA she successfully performed all the necessary and essential functions of her position.

THIRTY-FIFTH: Plaintiff received performance evaluations every year and they were all favorable.

THIRTY-SIXTH: Additionally, Plaintiff also received numerous "spotlight" awards for outstanding service.

THIRTY-SEVENTH: On April 11, 2018, Plaintiff was summoned to a meeting with BSA HR representatives Colon and White as BSA was conducting an internal whistleblower investigation.

THIRTY-EIGHTH: During this meeting Plaintiff was interrogated about her friendship with Dave Widger ("Widger").

THIRTY-NINTH: Then three days later, on April 14, 2018, Plaintiff began to become the victim of unwanted sexual harassment from Merkel.

FORTIETH: Plaintiff had the good faith belief that Merkel's harassment was due to the fact that BSA's HR representatives were creating rumors that Plaintiff was a loose sexual woman who had sex with her co-workers.

FORTY-FIRST: Merkel began sending uninvited and unsolicited texts messages to Plaintiff referring to her as a "chic" and asking how her weekend was going.

FORTY-SECOND: On April 15, 2018 at 2:26 AM, Merkel sent an uninvited and unsolicited text message to Plaintiff telling her "hang in there chic."

FORTY-THIRD: Merkel continued his pattern of harassing behavior by continuing to text message Plaintiff after work hours and on non-working days.

FORTY-FOURTH: On Sunday May 13, 2018 Merkel sent Plaintiff a message "hey lady" and referred to Plaintiff as a "dudette."

FORTY-FIFTH: On June 5, 2018, Plaintiff was summoned to another meeting with BSA's HR representatives Colon and White.

FORTY-SIXTH: Plaintiff was told the meeting was for "fact finding" and

anything she said in the meeting was private and could not be used against her, and then in direct contrast Plaintiff was told that anything she said could result in disciplinary action or termination of her employment.

FORTY-SEVENTH: Colon and White told Plaintiff to "come clean" if she had held back any information or had anything to add or wanted to change.

FORTY-EIGHTH: Colon and White told Plaintiff this was a chance to protect her personal and professional reputation.

FORTY-NINTH: Plaintiff found all of this to be offensive and accusatory because Colon and White were under the preconceived notion that Plaintiff was a loose sexual woman who had sex with her co-workers.

FIFTIETH: During this meeting, Colon and White asked extremely probing questions about Plaintiff's personal sex life that in no way pertained to employment with BSA.

FIFTY-FIRST: Plaintiff told them that she was uncomfortable and never thought she would have to sit in a conference room and speak of her personal, non-work related private relationships, Colon and White pressed on saying it was necessary.

FIFTY-SECOND: The tone of the meeting was extremely hostile and Plaintiff felt that she was being coerced into divulging details about her personal sex life or else she would face severe harm to her reputation and/or termination.

FIFTY-THIRD: None of the information that Colon and White were seeking to gather pertained in any way to Plaintiff's employment with BSA and upon information and belief was done for the purpose to harass and discriminate against Plaintiff.

FIFTY-FOURTH: Colon and White informed Plaintiff that it had come to their attention that she had a sexual relationship with Widger and asked her if she was involved in a sexual relationship with him.

FIFTY-FIFTH: In fear of losing her job and the treat to cause damage to her reputation, based on their incorrect information, Plaintiff answered in detail all questions about her non-sexual friendship with Widger as she told Colon and White she never had sex with Widger.

FIFTY-SIXTH: Colon and White also asked Plaintiff if she ever paid a hotel bill for Widger and they wanted to know if Plaintiff had recent contact with Widger to which she responded by offering her personal cell phone records as proof that she had no contact with Widger.

FIFTY-SEVENTH: Colon and White wanted to know if Plaintiff knew of any email correspondence that she sent to Widger that was professionally inappropriate for any reason, to which Plaintiff said she did not.

FIFTY-EIGHTH: Colon made repeated comments and innuendos about Plaintiff's sexual reputation and the manner in which the questions were asked made Plaintiff uncomfortable, as the questions were accusatory and threatening as well as inappropriate, invasive, extremely personal, private and irrelevant to her job at BSA.

FIFTY-NINTH: Plaintiff was so disturbed and upset after this interrogation into her personal sex life that she could not return to work and had to go home for the remainder of the day.

SIXTIETH: On June 7, 2018, due to the continued sexual harassment she was facing and the creation of rumors that she was a loose sexual woman who had sex with her co-workers,

8

Plaintiff formally complained to the Manager of Radiological Control Division that she was being sexually harassed and wished for it to stop.

SIXTY-FIRST: On Friday June 8, 2018, Plaintiff received a telephone call from Bob Lincoln ("Lincoln"), BSA's HR Representative, and he told her he had learned of her "concerns" and asked her if she would be open to speaking to him about them.

SIXTY-SECOND: On June 10, 2018, Merkel sent a text message to Plaintiff stating "Just thinking about you," and went further by stating "You have always been so nice to me...sorry....drinking. Forgive me."

SIXTY-THIRD: As time went on Merkel began to escalate the harassing behavior against Plaintiff.

SIXTY-FOURTH: Merkel told Plaintiff "Good Grief....my beers are speaking volumes!! So Sorry... believe I went to bible college? What a joke," and further stated "Wont bother you further."

SIXTY-FIFTH: But in fact, Merkel did continue to bother and harass Plaintiff.

SIXTY-SIXTH: Ongoing sexual harassment text messages from Merkel to Plaintiff included "I am sorry for being forward. Please forgive me," and "Oh hell. ...please forgive. Drunk and know you are not into me Sorry and embarrassed. What a jerk I am and fool. Sorry to put you on spot. My apologies. Sorry ...Liz i am a jerk sorry."

SIXTY-SEVENTH: Merkel knew that he was harassing Plaintiff as demonstrated by his apologies, but despite this, he continued with the harassment.

SIXTY-EIGHTH: On Monday June 11, 2018, at 6:50pm Merkel texted Plaintiff, "OMG....so sorry. What a damn fool. Went back and read my messages. So sorry. Totally inappropriate and not right."

9

SIXTY-NINTH: On June 11, 2018, Plaintiff and Lincoln met in the Manager of Radiological Control Division's office. Lincoln told Plaintiff he was very sorry she had to go through an uncomfortable interview process however, he was not sorry for the personal sexual questions that were asked of her.

SEVENTIETH: He further explained that someone was feeding Widger with inside information regarding the investigation against him and it was very important that they find out who was doing this.

SEVENTY-FIRST: Plaintiff advised that she understood the seriousness of BSA's investigation and this issue at hand and that she fully cooperated and would continue to fully cooperate with the investigation but did not think Colon and White should have created a hostile work environment and subjected her to sexual harassment in the way that they did.

SEVENTY-SECOND: No remedial measures were offered to Plaintiff and, because of this, the sexual harassment and hostile working environment continued.

SEVENTY-THIRD: On Tuesday June 19, 2018, at 9:27am, Merkel wrote to Plaintiff "Want to say sorry again. I was way out of line." "Was mad at myself for being like that."

SEVENTY-FOURTH: Upon information and belief, Merkel thought it was ok to sexually harass Plaintiff due to Defendants' actions and the creation of rumors that Plaintiff had sex with another male co-worker thereby giving Plaintiff the reputation within BSA that she was a loose sexual woman who would have sex with her co-workers.

SEVENTY-FIFTH: On June 20, 2018, Merkel texted Plaintiff "You are the reason I never come to 120. Sorry I am a jerk off pc of crap. I avoid because of my attraction to you. Sorry to be forward by you know so. You are a married woman and I am sorry I am seemingly a pc of shit intruding. My apologies. Sorry."

SEVENTY-SIXTH: Merkel continued and wrote "No way would ever say so. Your husband is my friend even though he never thought so. well some day....maybe someday you will...you finish story chic. Lol," thereby inviting Plaintiff to have sex with him in the future, all due to BSA's actions that created false rumors that Plaintiff was a loose sexual woman who would have sex with her co-workers.

SEVENTY-SEVENTH: He continued to sexually harass Plaintiff and wrote to Plaintiff "Dang.....Christian dude trying to behave. You are a beautiful woman and so ashamed."

SEVENTY-EIGHTH: Continuing with his harassment of Plaintiff, on Thursday June 21, 2018 at 11:22am Merkel sent another text message acknowledging his continued harassment and stating the following, "So sorry what a jerk asshole I was."

SEVENTY-NINTH: Despite realizing that he was harassing Plaintiff, Merkel's text messages continued and escalated in their sexual nature.

EIGHTIETH: On Sunday, July 8, 2018, at 11:47am he once again referred to Plaintiff as "Hey lady," and that he just did not "want to be a letdown" referring to his attempts to have a sexual relationship with Plaintiff.

EIGHTY-FIRST: Then on Monday July 9, 2018, texting Plaintiff "You are perfect," and the next day via text, "ok babe....thanks,' but later that day "Oh holy....sorry....my bad and sorry.

EIGHTY-SECOND: As a result of Defendants' sexual harassment of her and their belief that she was having sex with another male employee and due to Colon's and White's adverse actions, Plaintiff's co-workers believed she was having sex with another BSA co-worker.

EIGHTY-THIRD: Plaintiff then began to notice that some of her co-workers seemed to be avoiding her but at first she just thought everyone was afraid to talk about the BSA's

investigation of Dave Widger (Widger).

EIGHTY-FOURTH: A co-worker of Merkel's named Tyler Rovig ("Rovig") had worked in BSA's RCD during Plaintiff's entire twenty –two (22) years at BSA and always had a friendly rapport with Plaintiff, where they often discussed work issues.

EIGHTY-FIFTH: But now, he barely acknowledged Plaintiff when he saw her in passing and when they needed to speak for work related business, it was obvious that he was uncomfortable talking to Plaintiff.

EIGHTY-SIXTH: Plaintiff came to realize that all of her co-workers were treating her this way because Defendants made it falsely known that Plaintiff had sex with Widger and that she would have sex with other men and that sexually harassing Plaintiff was okay.

EIGHTY-SEVENTH: Vicki Litton ("Litton") another BSA employee told Plaintiff that Charles Birchfield, told her that Plaintiff was having sex with Widger.

EIGHTY-EIGHTH: Plaintiff was shocked and humiliated when she heard this sexual lie, she felt sick to her stomach, and then put all the pieces together that the Defendants were aiding and abetting false sexual rumors about her because she was a friend of Widger.

EIGHTY-NINTH: Plaintiff became more and more depressed and more anxious due to this hostile work environment that had been created.

NINETIETH: Due to the fact that her working conditions had been altered for the worse and the creation of a hostile working environment, Plaintiff sought medical treatment and was placed on sick leave for a recommended two months, starting approximately July 12, 2018, where she was to be on anti-depressants and anti- anxiety medication.

NINETY-FIRST:   Plaintiff tried to return to work after about a month but BSA's Occupational Medical Clinic examined her and said she was not ready to return to work and sent her back to follow up with her doctors.

NINETY-SECOND: Plaintiff was out another month but due to her dedication and against her doctors' recommendation, returned to work at BSA.

NINETY-THIRD:   On or about October 1, 2018, Plaintiff learned White and Colon made it clear to Plaintiff's co-workers and managers not to trust her. This was an act of retaliation against Plaintiff for engaging in protected activity.

NINETY-FOURTH: On October 2, 2018, Kimberly Wehunt ("Wehunt") came into Plaintiff's office and shut the door. She said she wanted to apologize to Plaintiff for anything she did or said that dragged Plaintiff into the investigation or may have implicated Plaintiff.

NINETY-FIFTH:   Wehunt said she had heard rumors regarding Plaintiff's alleged sexual reputation and that she did not want to get into the detail of those rumors but that those rumors did not add up but she chose to believe them anyway and acted on them and she was sorry if it had caused Plaintiff any problems.

NINETY-SIXTH:   This further demonstrates that Defendants' actions, caused Plaintiff to work in a hostile work environment and that their actions furthered the sexual harassment of Plaintiff.

NINETY-SEVENTH:   Subsequent to her meeting with Wehunt, Plaintiff sent another formal written complaint to Lincoln that she was being subjected to sexual harassment in the work place.

NINETY-EIGHTH: As a result, Plaintiff had a meeting with BSA's HR Representative Joann Williams, and Michael Hernandez, legal counsel for BSA.

NINETY-NINTH:   Plaintiff was told they would conduct a thorough investigation, however, months went by and Plaintiff never heard back.

ONE HUNDREDTH:   Finally, Plaintiff was given the results of the investigation but then realized Defendants never conducted an investigation because it was admitted that no witnesses were ever interviewed and no fact gathering process took place.

ONE HUNDRED FIRST:   Because no investigation was conducted BSA's HR told Plaintiff that her allegations could not be substantiated.

ONE HUNDRED SECOND:   Due to the continuous hostile, discriminatory and retaliatory environment and BSA taking no action to remedy the situation, on or about February 2019 Plaintiff wanted to leave her employment.

ONE HUNDRED THIRD:   During her exit interview BSA's HR demonstrated that they did not take Plaintiff's complaints seriously because it was stated to Plaintiff "why do you care what people say about you? You're an adult and we have to act like grownups."

ONE HUNDRED FOURTH:   Due to the fact that Plaintiff did not have suitable subsequent employment in place if she were to leave, she decided to stay until she was able to find a new suitable job.

ONE HUNDRED FIFTH:   Plaintiff has exhausted her administrative remedies and filed her Charge with the EEOC on or about October 10, 2018.

ONE HUNDRED SIXTH:   On or about September 20, 2019, Plaintiff received her right to sue letter and timely filed this instant action within 90 days of receipt of said right to sue letter.

**WHEREFORE,** Plaintiff demands judgment against the Defendants as follows,

1. For a money judgment against Brookhaven Science Associates, LLC representing actual damages for Gender Discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

2. For a money judgment against Brookhaven Science Associates, LLC representing compensatory damages for Gender Discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

3. For a money judgment against Brookhaven Science Associates, LLC representing emotional damages for Gender Discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

4. For a money judgment against Brookhaven Science Associates, LLC representing actual damages for retaliation against plaintiff for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

5. For a money judgment against Brookhaven Science Associates, LLC representing compensatory damages for retaliation against plaintiff for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

6. For a money judgment against Brookhaven Science Associates, LLC representing emotional damages for retaliation against plaintiff for engaging

in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

7. For a money judgment against Brookhaven Science Associates, LLC representing actual damages for the creation of a Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

8. For a money judgment against Brookhaven Science Associates, LLC representing compensatory damages for the creation of a Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

9. For a money judgment against Brookhaven Science Associates, LLC representing emotional damages for the creation of a Hostile Work Environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*;

10. For a money judgment against Defendants representing actual damages for Gender Discrimination and sexual harassment in violation of NYEL § 290 *et seq.*;

11. For a money judgment against Defendants representing compensatory damages for Gender Discrimination and sexual harassment in violation of NYEL § 290 *et seq.*;

12. For a money judgment against Defendants representing emotional damages for Gender Discrimination and sexual harassment in violation of NYEL § 290 *et seq.*;

13. For a money judgment against Defendants representing actual damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL § 290 *et seq.*;

14. For a money judgment against Defendants representing compensatory damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL § 290 *et seq.*;

15. For a money judgment against Defendants representing emotional damages for retaliation against plaintiff for engaging in protected activity in violation of NYEL § 290 *et seq.*;

16. For a money judgment against Defendants representing actual damages for the creation of a Hostile Work Environment in violation of NYEL § 290 *et seq.*;

17. For a money judgment against Defendants representing compensatory damages for the creation of a Hostile Work Environment in violation of NYEL § 290 *et seq.*;

18. For a money judgment against Defendants representing emotional damages for the creation of a Hostile Work Environment in violation of NYEL § 290 *et seq.*;

19. For equitable and injunctive relief;

20. For reasonable attorney's fees and costs; and

21. For all other relief as the Court may deem just and proper.

## JURY DEMAND

**Plaintiff hereby demands a trial by jury for all issues in this action.**

Dated: Islandia, New York
       December 17, 2019

          **SCOTT MICHAEL MISHKIN, P.C.**
By: _/s/ Paul Carruthers_

          Paul A. Carruthers, Esq.
          One Suffolk Square, Suite 240
          Islandia, New York 11749
          Telephone: 631-234-1154
          Facsimile: 631-234-5048
          *Attorneys for Plaintiff*